UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-10813-RGS

RAOUL MARRADI

v.

GALWAY HOUSE, INC. and 702 REALTY TRUST

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

April 15, 2014

STEARNS, D.J.

Plaintiff Raoul Marradi, who has cerebral palsy and uses a wheelchair, has brought a number of discrimination lawsuits in this court under the public accommodations provisions of Title III of the American with Disabilities Act (ADA), 42 U.S.C. § 12181, et seq. In this case, he alleges that Galway House, Inc., as lessee, and 702 Realty Trust, as owner, of Galway House, an ersatz Irish neighborhood bar and restaurant, have failed to remove barriers that prevent access to the pub by individuals with disabilities. Marradi seeks a permanent injunction ordering the removal of any such barriers, as well as an award of attorney's fees and costs.[1]

---

[1] Marradi's nominal counsel is Todd Shulby, a Florida-based lawyer, who files hundreds of similar lawsuits nationally each year with the same stable of plaintiffs. The attorney who appeared at the dispositive motion hearing on Marradi's behalf is Edward Garno from Dracut, Massachusetts, who has appeared as counsel for plaintiffs in eighty-one ADA cases in this court,

Defendants move for summary judgment asserting that Marradi lacks standing, as he allegedly conceded that, at the time of his filing the Complaint, he had no intention of returning to Galway House. Alternatively, defendants argue that Marradi has failed to sustain his entry-level burden of demonstrating that the removal of the objectionable barriers is "readily achievable." Def.s' Mem. at 1. A hearing on the motion was held on April 9, 2014. Because Marradi has failed to articulate a plausible proposal of a method for barrier removal, the costs of which do not clearly exceed the benefit to be gained, judgment will enter for defendants.

## BACKGROUND

Galway House is an Irish pub-style restaurant located at 710-712 Centre Street in Jamaica Plain, Massachusetts (Property). The 702 Realty Trust (Trust) owns the Property and leases it to Galway House. Since 2007, Galway House has been wholly owned and operated by Edward Lanzillo, its President. Under the lease agreement, Galway House is responsible for routine maintenance and repairs to the Property. The Trust is responsible for all structural repairs, capital improvements, and foundation repairs (other than those caused by the negligence of the Lessee). Since entering into the lease in

---

presumably in concert with Shulby.

2007, neither Galway House nor the Trust has made any structural alterations or modifications to the Property, including barrier removal. Galway House employed 9 persons in 2010, 11 persons in 2011, and 11 persons in 2012 to date.

On March 17, 2013 (St. Patrick's Day), Marradi, who lives at 82 Green Street in Jamaica Plain, visited Galway House, which is approximately one-half mile from his home, to have dinner with a friend, Anthony Lee. Marradi arrived at Galway House by wheelchair. The front entrance to Galway House on Centre Street is a 4 or 5 inch step up from the public sidewalk.[2] Marradi decided to use the rear entrance, which requires traversing a garage and ascending a ramp to a loading dock where a door opens on the Galway House kitchen. As the kitchen is crowded with appliances and food staging areas, there is little room in which to maneuver a wheelchair. Marradi and Lee waited for a table in the bar area and eventually were seated in the main dining room. While waiting and eating, Marradi and Lee (who is not disabled) observed other access barriers.[3] Pl.'s SOF ¶¶ 91, 103.

---

[2] Defendants contend that other patrons in wheelchairs have accessed Galway House through its front door, but that Marradi was deterred because of his weight.

[3] Marradi's list of "unlawful barriers" at Galway House is as follows.

There is not an accessible route throughout the site and facility (2010 Standards sections 206 and 402); there is an inaccessible step at the

3

Marradi filed this lawsuit on April 9, 2013. Marradi is, or has been, a plaintiff in seven ADA lawsuits filed in the District of Massachusetts. Each of the eight-page Complaints are identical, with only the preamble identifying the defendant(s) and Paragraph 17, listing the alleged barriers, tailored to fit the case at hand.[4]

DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

    entrance; the entrance door lacks maneuvering clearance; there are doors that are inaccessible (2010 Standards sections 206.5 and 404); the Facility lacks accessible parking; counters where customer service and/or transactions occur are inaccessible (2010 Standards sections 227 and 904); there are restrooms that are inaccessible (2010 Standards sections 213 and 603); the restroom door lacks maneuvering clearance; the restroom door is too narrow; the water closets are inaccessible (2010 Standards sections 213, 603 and 604); the toilet is in a stall which is too small; the toilet does not have compliance grab bars; the lavatories are inaccessible (2010 Standards sections 213, 603 and 606); the pipes underneath the lavatory are not insulated; the lavatory lacks knee clearance; the restroom sign is on the door; and the urinals are inaccessible.

Am. Compl. ¶ 17.

[4]Lee has teamed with Marradi in bringing two ADA lawsuits against Wendy's International, the first of which was dismissed by Judge Lindsay on August 20, 2004. *See Lee v. Wendy's Int'l*, 04-CV-10582-RCL (D. Mass. 2004). A second action brought against Wendy's International was dismissed by Judge O'Toole in 2009. *Commonwealth (Lee et al.) v. Wendy's Int'l*, 08-CV-11468-GAO (D. Mass. 2008).

4

judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (citation omitted). "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." *Id*. A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995).

"[T]he ADA is designed 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Tennessee v. Lane*, 541 U.S. 509, 516 (2004), quoting 42 U.S.C. §§ 12101(b)(1), (b)(4). Title III of the ADA is specifically intended to remedy access discrimination in public accommodations. *Id*.[5]

---

[5] Section 12182(a) states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or

5

*Standing*

Defendants' standing argument is based on Marradi's alleged disavowal of an intention to return to Galway House.[6] Article III limits the decisional power of the federal courts to actual cases and controversies. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). The doctrine of "standing" addresses whether a particular plaintiff has "such a personal stake in the outcome of [a] controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Baker v. Carr*, 369 U.S. 186, 204 (1962). The burden of establishing standing rests with the party invoking federal jurisdiction. *Bennett v. Speas*, 520 U.S. 154, 167-168 (1997). There are "three fundamental requisites of standing that every litigant invoking the jurisdiction of the federal courts must possess: (1) injury-in-fact – an invasion of a legally-protected interest that is both concrete and particularized, and actual or imminent; (2) causation; and (3) redressability." *Benjamin v. Aroostook Med. Ctr., Inc.*, 57 F.3d 101, 104 (1st Cir. 1995).

"'[A] disabled individual who is currently deterred from patronizing a

---

operates a place of public accommodation.

[6] When asked at his deposition, "Do you have plans to go back to Galway House?" Marradi responded, "I don't know." Marradi Dep. at 16.

public accommodation due to a defendant's failure to comply with the ADA' and 'who is threatened with harm in the future because of existing or imminently threatened noncompliance with the ADA' suffers actual or imminent harm sufficient to confer standing." *Disabled Americans For Equal Access, Inc. v. Ferries Del Caribe*, 405 F.3d 60, 64 (1st Cir. 2005), quoting *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002).

Some courts have taken a dim view of plaintiffs who visit a commercial establishment for the sole purpose of bringing a claim under Title III of the ADA. These courts hold that ginned up litigation is unlikely to trigger the redressability component of Article III standing. *See, e.g., Harris v. Stonecrest Care Auto Ctr., LLC,* 472 F. Supp. 2d 1208, 1219 (S.D. Cal. 2007) ("Where litigation is the only reason for a plaintiff's visit to a particular local establishment, once litigation is complete it is unlikely such a plaintiff will return to avail himself of the business's goods or services, or to visit the local business for any other reason. Any permanent injunction obtained in the course of litigation might benefit others, but it would not benefit the plaintiff."); *cf. Frotton v. Barkan,* 236 F. Supp. 2d 92, 98 (D. Mass. 2002) (denying a preliminary injunction after expressing doubt about plaintiffs' assertion that they intended to return to defendant's market despite the many supermarkets closer to where they lived).

The Second, Eighth and Ninth Circuits, on the other hand, have held that an inaccessible entrance which prevents a plaintiff from entering a public establishment is an injury-in-fact that in-and-of-itself confers standing irrespective of the plaintiff's motive. *See Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013); *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 950-951 (9th Cir. 2011) (en banc); *Steger v. Franco, Inc.*, 228 F.3d 889, 893-894 (8th Cir. 2000). Moreover, in the view of the Second Circuit, "once a plaintiff establishes standing with respect to one barrier in a place of public accommodation, that plaintiff may bring ADA challenges with respect to all other barriers on the premises that affect the plaintiff's particular disability." *Kreisler*, 731 F.3d at 188.

Several Circuits have gone further to specifically hold that a "tester" motive for a plaintiff's visit to a business does not negate ADA standing.[7] *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013)

---

[7] In *Iverson v. Braintree Prop. Assocs., L.P.*, 2008 WL 552652, at *3 n. 5 (D. Mass. Feb. 26, 2008), Judge Gertner rejected an "anti-tester" argument, holding that "[i]f the ADA were enforced directly by the government, as are, for example, the fair housing laws, it is likely that government lawyers would have reached out to disabled individuals – 'testers' as they are called – to find out which businesses were complying and which were not. [The named plaintiff] has functioned here as a 'tester,' which is entirely appropriate." *Id*. Judge Young favorably commented on, but did not adopt Judge Gertner's holding, in *Norkunas v. HPT Cambridge, LLC*, 2013 WL 5229838, at *6 (D. Mass. Sept. 18, 2013).

("[T]he alleged violations of Houston's statutory rights under Title III may constitute an injury-in-fact, even though he is a mere tester of ADA compliance."); *Tandy v. City of Wichita*, 380 F.3d 1277, 1286-1288 (10th Cir. 2004) (a disabled passenger whose sole purpose in riding city buses was to demonstrate lack of ADA compliance granted standing to seek prospective injunctive relief). As a rule, so long as a plaintiff's plans to return and make use of the accommodation are "reasonably fixed and specific in time and not too far off," his threat of future injury is "real and immediate" enough to satisfy the standing doctrine. *Houston*, 733 F.3d at 1339-1340; *see also Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008) (to establish standing, an ADA public accommodation plaintiff must (1) "allege[ ] past injury under the ADA"; (2) show that "it is reasonable to infer from [his or] her complaint that this discriminatory treatment will continue"; and (3) show that "it is also reasonable to infer, based on the past frequency of [his or] her visits and the proximity of [the public accommodation] to [his or] her home, that [he or she] intends to return to [the public accommodation] in the future.").

"'In determining whether a plaintiff's likelihood of returning to a particular establishment is sufficient to confer standing, courts have examined factors such as: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3)

9

the definiteness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near the accommodation in question.'" *Fiedler v. Ocean Props., Ltd.*, 683 F. Supp. 2d 57, 72 (D. Me. 2010), quoting *Stonecrest Care Auto*, 472 F. Supp. 2d at 1215-1216. While Marradi concedes that he visited Galway House as a "tester," he also states in his Amended Complaint that he "intends to visit the Facility again in the near future in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at this facility, but will be unable to do so because of his disability due to the physical barriers to access, dangerous conditions and ADA violations that exist at the property that preclude and/or limit his access to the Facility." Am. Compl. ¶ 15. As Marradi lives near Galway House (and has so for five years), and claims that he had visited Galway House on four occasions prior to the one that figures in the Amended Complaint, it is not unreasonable to infer that he may in fact return to Galway House in the not too distant future. Although the question might be a close one in light of Marradi's ambiguous answer at his deposition, given the remedial purposes of Title III and the role assigned by Congress to private enforcement of its provisions, the benefit of the doubt as to standing should be accorded even to the "tester" plaintiff.

### *Removal of Barriers*

The ADA prohibits the "failure to remove architectural barriers . . . in

existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). A plaintiff bears the initial burden in a Title III action of showing that an architectural barrier exists, and that the proposed method of barrier removal is "readily achievable."[8] Readily achievable means "easily accomplishable and able to be carried out without much difficulty or expense." *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1273 (11th Cir. 2006), quoting 42 U.S.C. § 12181(9). If a plaintiff articulates a plausible proposal for a method of barrier removal, the costs of which on their face do not clearly exceed the benefits, the burden shifts to the defendant to rebut the plaintiff's showing. *Kreisler*, 731 F.3d at 189. The factors to be considered in evaluating whether removal of a barrier is "readily achievable" include

> (A) the nature and cost of the action needed under this chapter;
>
> (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such

---

[8] Marradi mistakenly argues that whether or not the removal of a barrier is "readily achievable" is an affirmative defense that does not relieve a defendant of any burden of proof at summary judgment. However, the Tenth Circuit (2001) case on which Marradi relies, recognizes, consistent with the holding of numerous other courts, that an ADA "[p]laintiff must initially present evidence tending to show that the suggested method of barrier removal is readily achievable under the particular circumstances," and only after this burden of production is met, does the burden of persuasion shift to the defendant. *See Colorado Cross Disability Coal. v. Hermanson Family Ltd.*, 264 F.3d 999, 1002-1003 (10th Cir. 2001).

facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9).

It would be unfair (and self-defeating) to require an ADA plaintiff to come forward with "precise cost estimates" and "specific design details" regarding a proposed accommodation. *See Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 373 n.6 (2d Cir. 2008). However, "a plaintiff must present sufficient evidence so that a defendant can evaluate the proposed solution to a barrier, the difficulty of accomplishing it, the cost implementation, and the economic operation of the facility. Without evidence on these issues, a defendant cannot determine if it can meet its subsequent burden of persuasion." *Gathright-Dietrich*, 452 F.3d at 1274. In *Gathright-Dietrich*, the court found the three proposals advanced by plaintiffs to address wheelchair access to an historic Atlanta theater fell short of the burden of production as the proposals were simply conceptual in design and failed to address any associated engineering

and structural concerns. Moreover, plaintiffs "failed to take even the rudimentary steps of formulating what [the] estimated costs might be . . . ." *Id.* at 1275.

Here, to satisfy his burden, Marradi has submitted photographs and the unsworn declaration of his purported expert (the executive director of a center "providing advocacy and services to people with disabilities"), essentially reciting generic ADA legal standards. The expert report, which is based on one visit of an undisclosed duration to Galway House, is a preprinted "ADA Checklist for Readily Achievable Barrier Removal," most of which is incomplete or simply checked "N/A," "yes," or "no," with no indication of any preferred, site-specific remedy (the typical proposal is "alter," "remove," "reconfigure," "relocate," or "adjust"). *See* Pl.'s Ex. 14. The report includes no estimates of the costs of implementation or the relative priority of any proposed alterations.[9] This submission, for what it is worth, fails to satisfy

---

[9] Marradi's attempt to overcome the failure to meet his burden on the "readily achievable" prong consists of the allegations that the Galway House occupies 25,500 square feet of space and that the Property is valued at $3,088,000. He also claims that Galway House booked $1,066,562 in gross receipts in 2011. (Galway House for its part claims that its total net assets in 2011 were $197,229, and its taxable income was $12,119. Def. SOF ¶ 6.). While the financial resources of a facility are relevant, they become so only after the plausibility and general costs of a plaintiff's suggested methods of barrier removal are established.

Marradi's entry-level burden of production on summary judgment.

ORDER

Because Marradi has failed to meet his burden of articulating a plausible proposal for barrier removal that is readily achievable, defendants' motion for summary judgment is <u>ALLOWED</u>. The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE